

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00207-CR
### NO. 02-12-00208-CR

ZANDRIA JOHNSON A/K/A                                        APPELLANT
ZANDRIA FAGAN

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant Zandria Johnson a/k/a Zandria Fagan perfected this appeal from the trial court's judgments revoking her community supervision. Appellant pleaded guilty to two offenses, debit card abuse and possession of a controlled substance by fraud. She was placed, respectively, on three years' and four

---

[1]*See* Tex. R. App. P. 47.4.

years' deferred adjudication community supervision. Subsequently, the State filed motions to proceed to adjudications of Appellant's guilt in both cases. The trial court found each of the community supervision violations alleged by the State in both motions to be true, adjudicated Appellant guilty in both cases, sentenced her to two years' confinement in the State Jail Division of the Texas Department of Corrections for the debit card abuse offense and ten years' confinement in the Texas Department of Criminal Justice for the possession of a controlled substance by fraud offense, and ordered that the sentences run concurrently. Appellant perfected this appeal from the trial court's judgments adjudicating her guilt; she raises eight issues. For the reasons set forth below, we will affirm the trial court's judgments.

## II. Standard of Review

The decision to proceed to an adjudication of guilt and revoke deferred adjudication community supervision is reviewable in the same manner as a revocation of ordinary community supervision. Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (West Supp. 2012). We review an order revoking community supervision under an abuse of discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Cherry v. State*, 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex.

2

Crim. App. 1993); *Cherry*, 215 S.W.3d at 919. The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); *Cherry*, 215 S.W.3d at 919. If the State fails to meet its burden of proof, the trial court abuses its discretion by revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94. Proof by a preponderance of the evidence of any *one* of the alleged violations of the conditions of community supervision is sufficient to support a revocation order. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980); *Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd).

### III. Issues One and Three

The State's motions to proceed to adjudications of Appellant's guilt in both the debit card abuse case and the possession of a controlled substance by fraud case alleged that Appellant had violated the terms of her community supervision by committing the offense of possession of a controlled substance, namely, opiates. In her first and third issues, Appellant contends that the trial court abused its discretion by finding this alleged community supervision violation to be true in both cases.

Department of Public Safety Deputy David Farrell testified that on November 8, 2010, he stopped a vehicle for speeding. Appellant's husband, Mr.

3

Fagan, was driving the vehicle; Appellant was the only passenger. After both Mr. Fagan and Appellant consented to a search of the vehicle, Deputy Farrell found a purse or bag inside the vehicle that contained several pill containers. Both Mr. Fagan and Appellant claimed ownership of the bag and pill containers. Some of the pill containers had labels, some did not; some containers were labeled with Mr. Fagan's name, some containers were labeled with other people's names. Deputy Farrell investigated and eliminated the pills for which he confirmed a valid prescription existed. One of the bottles that Deputy Farrell did not find to be connected to a legitimate prescription contained morphine.[2] Mr. Fagan told Deputy Farrell that the morphine belonged to his mother-in-law, Nancy Austin. Deputy Farrell testified that possession of a prescription drug that is not prescribed to the possessor is a criminal offense.[3] The dash-cam video of the stop and pictures of the pills were admitted into evidence at the hearing on the State's motions to proceed to adjudications of Appellant's guilt.

Appellant testified at the hearing that she did not have a prescription for morphine on the night she and her husband were stopped.[4] Mr. Fagan testified

---

[2]Deputy Farrell testified that while roadside during the stop, he contacted Texas Poison Control and read them the marking on the pills; a poison control employee told him that the pills were morphine.

[3] *See* Tex. Health & Safety Code Ann. § 481.115 (West 2010).

[4]Appellant testified on cross-examination:

Q. And as far as November 8th of 2010, I'll start with the—the 600-milligrams of ibuprofen. Did you have a prescription at that time for that drug?

4

that neither he nor Appellant had ever been prescribed morphine. Mr. Fagan testified that he and Appellant were moving some items from his mother-in-law's trailer in Gordonville to her home in Frisco and that is why they had her medications. He said they stopped by the trailer to get the medications to save his mother-in-law time; he had no idea why the labels would have been removed from the bottles. Appellant testified that she did not put any of her mother's prescription medications into the bag in which they were found by Deputy Farrell; her husband, Mr. Fagan, did that. Appellant assumed that the medications were her mother's prescription medications. Appellant testified that it was not her intention to do anything that day except ride along with her husband to get her mother's things and take them to her mother.

Appellant's mother, Nancy Austin, testified that the morphine had been prescribed for her. Records from Walgreens showed that a Dr. Lewis prescribed morphine for Ms. Austin twice, once on September 21, 2010, and once on October 19, 2010. One prescription was for 30-milligram tablets and one was for 15-milligram tablets. Ms. Austin testified that she had removed the labels from

A. Yes, sir.

. . . .

Q. What about the morphine? Did you have a prescription for morphine that night?

A. No, sir.

5

the morphine bottles and that both prescriptions made her sick to her stomach and caused her to throw up. Ms. Austin said her doctor told her to take three of the pills and, if they still made her sick, to return to her office. Ms. Austin testified that she took only three pills from each morphine prescription, that she did not take any more of the sixty pills prescribed, that she never again took morphine, and that she stored the unused pills in a safe.

Viewed in the light most favorable to the judgment, the evidence shows that Appellant was on deferred adjudication community supervision for the offenses of debit card abuse and possession of a controlled substance by fraud when the vehicle driven by Mr. Fagan in which Appellant was a passenger was stopped for speeding. Appellant and Mr. Fagan consented to a search of the vehicle and, during his search, Deputy Farrell found a bag full of a variety of pill containers—some labeled, some not. One of the unlabeled bottles contained morphine, for which neither Appellant nor Mr. Fagan had a prescription. Although Appellant and Mr. Fagan explained their possession of the morphine by stating that it belonged to Ms. Austin and that they were just transporting it for her, the trial court is the sole judge of the credibility of the witnesses. In light of the evidence that the morphine was unlabeled and that it was intermingled in a bag with other containers of prescription drugs, some belonging to Mr. Fagan, some in unlabeled bottles, and some prescribed to other people, the trial court could have disbelieved this explanation. From the evidence presented at the hearing on the State's motions to proceed to adjudications of guilt, the trial court

6

did not abuse its discretion by finding that the State proved by a preponderance of the evidence that Appellant violated her community supervision by possessing opiates, a controlled substance, as alleged in the State's motions to proceed to adjudications of guilt. We overrule Appellant's first and third issues.[5]

## IV. Issues Seven and Eight

In her seventh and eighth issues, Appellant contends that the trial court abused its discretion by sentencing her to the maximum punishment allowed by law after adjudicating her guilty of the offenses of debit card abuse and possession of a controlled substance by fraud.

When a defendant is adjudicated guilty, she is subject to the entire range of punishment for the offense. *Ditto v. State*, 988 S.W.2d 236, 238–39 (Tex. Crim. App. 1999). And generally, a sentence assessed within the statutory range will not be disturbed on appeal. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984).

While conceding these general principles and conceding that the sentences assessed in her two cases were within the statutory range for each

---

[5]In her second and fourth through sixth issues, Appellant challenges other grounds alleged by the State in its motions to proceed to adjudications of her guilt and found to be true by the trial court. Because we have overruled Appellant's first and third issues attacking the trial court's finding of "true" to the State's allegation that Appellant unlawfully possessed opiates, this community supervision violation alone is sufficient to support the trial court's determination to proceed to adjudications of Appellant's guilt. *See Moore*, 605 S.W.2d at 926. Therefore, we need not address Appellant's second and fourth through sixth issues. *See* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary to disposition of the appeal).

offense, Appellant nonetheless contends that the trial court abused its discretion by sentencing her to the maximum punishment in each case. Appellant argues that the punishment assessed by the trial court was based on the trial court's determination that all of the community supervision violations alleged by the State were true, and she claims some of the true findings are not supported by the record. Regardless of whether a trial court finds only one community supervision violation allegation to be true or finds multiple community supervision violation allegations to be true, the only punishment restrictions on a trial court proceeding to a final adjudication of guilt are the relevant statutory limits. *See Ex parte Broadway*, 301 S.W.3d 694, 698 (Tex. Crim. App. 2009); *Von Schounmacher v. State*, 5 S.W.3d 221, 223 (Tex. Crim. App. 1999). Because it is undisputed that Appellant's sentences are within the statutory limits, we hold that the trial court did not abuse its discretion by sentencing her to two years' confinement in the State Jail Division of the Texas Department of Corrections for the debit card abuse offense and ten years' confinement in the Texas Department of Criminal Justice for the possession of a controlled substance by fraud offense. We overrule Appellant's seventh and eighth issues.

### V. Conclusion

Having overruled Appellant's first, third, seventh, and eighth issues and having determined that we need not address Appellant's remaining issues, we affirm the trial court's judgments.

8

PER CURIAM

PANEL:  WALKER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 4, 2013